UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**CHRISTOPHER GISH,**

                Plaintiff,

v.                                            **Case No. 16-cv-811-pp**

**DR. EDGAR B. JACKSON, and
RELEVANCE COUNSELING,**

                Defendants.

---

**DECISION AND ORDER GRANTING THE PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYMENT OF THE FILING FEE (DKT. NO. 2), GRANTING THE PLAINTIFF'S MOTION FOR ACCESS TO RELEASE ACCOUNT (DKT. NO. 8), AND DISMISSING THE CASE**

---

The plaintiff, a Wisconsin state prisoner who is representing himself, filed a civil rights complaint under 42 U.S.C. §1983 alleging that the defendants violated his Eighth Amendment rights when they prescribed him medication that caused him to murder his girlfriend. Dkt. No. 1. This order resolves the plaintiff's motion for leave to proceed without prepayment of the filing fee, dkt. no. 2, and his motion for access to his release account, dkt. no. 8, and screens the plaintiff's complaint.

      **I.**     ***IN FORMA PAUPERIS* STATUS**

The Prison Litigation Reform Act applies to this action because the plaintiff was incarcerated when he filed his complaint. 28 U.S.C. §1915. The law allows a court to give an incarcerated plaintiff the ability to proceed with his lawsuit without pre-paying the civil case-filing fee, as long as he meets

1

certain conditions. Id. One of those conditions is a requirement that the plaintiff pay an initial partial filing fee. 28 U.S.C. §1915(b). Once the plaintiff pays the initial partial filing fee, the court may allow the plaintiff to pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On July 19, 2016, the court assessed an initial partial filing fee of $28.34. Dkt. No. 6. The plaintiff paid that amount through two payments received on August 1, 2016 and August 23, 2016. Therefore, the court will grant the plaintiff's motion for leave to proceed without prepayment of the filling fee, and will allow the plaintiff to pay the balance of the $350.00 filing fee over time from his prisoner account, as described at the end of this order.

**II. SCREENING OF PLAINTIFF'S AMENDED COMPLAINT**

A.  Standard for Screening Complaints

The Prison Litigation Reform Act requires federal courts to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court may dismiss a compliant, or part of it, if the claims alleged are "frivolous or malicious," fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

To state a claim under the federal notice pleading system, the plaintiff must provide a "short and plain statement of the claim showing that [he] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). The complaint need not plead specific

2

facts, and need only provide "fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). "Labels and conclusions" or a "formulaic recitation of the elements of a cause of action" will not do. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555).

The factual content of the complaint must allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Indeed, allegations must "raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. Factual allegations, when accepted as true, must state a claim that is "plausible on its face." Iqbal, 556 U.S. at 678.

Federal courts follow the two-step analysis set forth in Twombly to determine whether a complaint states a claim. Id. at 679. First, the court determines whether the plaintiff's legal conclusions are supported by factual allegations. Id. Legal conclusions not supported by facts "are not entitled to the assumption of truth." Id. Second, the court determines whether the well-pleaded factual allegations "plausibly give rise to an entitlement to relief." Id. The court gives *pro se* allegations, "however inartfully pleaded," a liberal construction. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

B.  Facts Alleged in the Complaint

Defendant Edgar Jackson is a psychiatrist employed by Relevance Counseling Services ("RCS") in Milwaukee, Wisconsin. Dkt. No. 1, ¶ 6. On July

3

9, 2012, the plaintiff's girlfriend introduced the plaintiff to Jackson because Jackson was their son's doctor. Id. After meeting with the plaintiff for only five minutes, Jackson prescribed the plaintiff one-milligram tablets of Xanax/Alprazolam and Lamicatal. Id., ¶¶ 6, 10. Jackson instructed the plaintiff to take this tablet three times a day, for a total of three milligrams per day. Id., ¶ 12.

The plaintiff states, "Dr. Edgar B. Jackson was unaware of the legal medical dose a person was allowed to intake into their system as a 1st time patient." Id., ¶ 9. He states that Jackson should have prescribed the plaintiff only .025-.05 milligram tablets, three times a day, for a total of 0.75-1.5 milligrams per day. Id., ¶¶ 10, 12. Jackson also did not inform the plaintiff of any of the side effects of the drugs, including "speaking incoherently, state of confusion, hallucinating, impaired memory, disinhibition[/]resist a thought [sic], cognitive disorder, depression, hypomania[/]mania, rage, and fear." Id., ¶¶ 12-13.

On July 14, 2012, the plaintiff stabbed his girlfriend to death, and tried to commit suicide. Id., ¶ 7. The court sentenced him to serve forty years in custody, followed by twenty years of extended supervision. Id., ¶ 8. The plaintiff alleges that because of Dr. Jackson, he was "overmedicated, which caused him to commit murder and attempt suicide." Id., ¶11. For relief, the plaintiff seeks monetary damages. Id., ¶¶ 15-17.

4

C. <u>Legal Analysis</u>

Federal courts have the jurisdiction to hear lawsuits that arise out of violations of federal law, or from violations of the federal Constitution, as well as lawsuits between citizens of different states under certain circumstances. In this case, the plaintiff's complaint says that he is suing the defendants under a federal civil rights law, 42 U.S.C. §1983. Section 1983 prohibits defendants acting "under color of . . . law" from depriving others of their civil rights. Section §1983 applies only to individuals acting under the color of state law. <u>West v. Atkins</u>, 487 U.S. 42, 48-49 (1988). Indeed, the purpose of §1983 is to "deter state actors, and private individuals in collaboration with state officials, from using a 'badge of authority' to deprive individuals of rights guaranteed by the Constitution." <u>Fries v. Helsper</u>, 146 F.3d 452, 457 (7th Cir. 1998) (quoting Wyatt v. Cole, 504 U.S. 158, 161 (1992). To prevail on a §1983 civil rights claim, a plaintiff must show that the defendant exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." <u>West,</u> 487 U.S. at 48-49.

The complaint contains no indication that Dr. Jackson or Relevance Counseling Services were state actors. According to the small business web site Manta, Relevance Counseling Service at 3635 West Oklahoma Avenue in Milwaukee, Wisconsin is a "privately held company." www.manta.com/c/mtq3330/relevance-counseling-service (last visited December 26, 2016). The court can find no indication that Relevance is owned by, operated by or affiliated with the state government.

5

Further, the plaintiff alleges that he met Dr. Jackson for the first time on July 9, 2012, and that he killed his girlfriend less than a week later. Dkt. No. 1 at 2. Thus, the plaintiff was not in state custody when he met Dr. Jackson, or when Dr. Jackson prescribed the medication. The Department of Corrections Offender Detail website supports this conclusion. It indicates that the plaintiff was released from the Milwaukee Secure Detention Facility on extended supervision on February 27, 2004. He did not return to state custody until January 9, 2013, some six months after Dr. Jackson prescribed him the medication. See http://offender.doc.state.wi.us/lop/detail.do (last visited December 26, 2016). Because he was not in state custody when Dr. Jackson prescribed him the medication, it is unlikely that the plaintiff was receiving the treatment or medication through the state. And the plaintiff indicates that he met Dr. Jackson because Dr. Jackson was his girlfriend's son's psychiatrist, not because he was referred there by the state.

The facts indicate, therefore, that the plaintiff received private medical care from Dr. Jackson and Relevance, independent of state action. As a result, the plaintiff fails to state a federal claim under 42 U.S.C. §1983. While the plaintiff may have state-law claims against these defendants, he has not asserted a claim for which a federal court can grant relief, and the court must dismiss his case.

### III. PLAINTIFF'S MOTION FOR ACCESS TO RELEASE ACCOUNT

On November 9, 2016, the plaintiff filed a motion for access to his release account to pay for "copies, postage, [and] filling fees related to this case." Dkt.

6

No. 8. The court has screened the plaintiff's complaint pursuant to 28 U.S.C. §1915A, and has dismissed the complaint for failure to state a claim. Therefore, the court will not allow the plaintiff to use his release account to pay for copies and postage.

Regarding the remainder of his filing fee, the Prison Litigation Reform Act requires the court to collect the filing fee from a "prisoner's account." 28 U.S.C. §1915(b). The term "prisoner's account" encompasses both a prisoner's release account and his general account. Spence v. McCaughtry, 46 F. Supp. 2d 861, 862 (E.D. Wis. 1999). At least one judge in this district, however, has concluded that "given the purpose of the release account to provide funds to the prisoner upon his or her release from incarceration, the court does not deem it prudent to routinely focus on the release account as the initial source of funds to satisfy the filing fee payment requirements of the PLRA." Smith v. Huibregtse, 151 F. Supp. 2d 1040 (E.D. Wis. 2001).

The plaintiff wants to have the remainder of the filing fee ($321.66) deducted from his release account. The plaintiff's trust fund account statement shows that he has a balance of $564.04 in his release account. See Dkt. No. 5. According to the DOC's website, the plaintiff's mandatory release/supervision date is July 2052. Further, the plaintiff is expected to pay for lawsuits that he files. Therefore, the court will allow the plaintiff to pay the remainder of his filling fee from his release account.

7

**IV. CONCLUSION**

The court **GRANTS** the plaintiff's motion for leave to proceed without prepayment of the filing fee. Dkt. No. 2.

The court **GRANTS** the plaintiff's motion for access to his release account to pay the remainder of his filing fee. Dkt. No. 8. The court **ORDERS** that the warden at Columbia Correctional Institution shall withdraw **$321.66** from the plaintiff's release account and forward that sum to the Clerk of this Court as payment for the balance of the filing fee in this action.

The court further **ORDERS** that this case is **DISMISSED** pursuant to 28 U.S.C. §§1915(e)(2)(B) and 1915A(b)(1) for failure to state a claim.

The court also **ORDERS** the Clerk of Court to document that this inmate has incurred a "strike" under 28 U.S.C. §1915(g).

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within 30 days of the entry of judgment. See Fed. R. of App. P. 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. See Fed. R. App. P. 4(a)(5)(A).

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within 28 days of the entry of judgment. The court cannot extend this deadline. See Fed. R. Civ P. 6(b)(2).

Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. <u>See</u> Fed. R. Civ. P. 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 27th day of December, 2016.

BY THE COURT:

_____
HON. PAMELA PEPPER
United States District Judge